Mayor, &c., of Cumberland, *et al. vs.* Magruder, *et al.*

---

MAYOR AND COUNCILMEN OF THE CITY OF CUMBERLAND, and others, *vs.* JONATHAN W. MAGRUDER, THOMAS J. McKAIG, and others.

*Construction of the Act of 1869, ch. 29, authorizing the Mayor and Councilmen of the City of Cumberland to build a certain bridge, in connection with the Act of 1864, ch. 121, which restricts their power to Pledge the credit of the city—Repeal by Implication disfavored.*

The 4th section of the Act of 1864, ch. 121, which is an amendment to the charter of the city of Cumberland, after granting certain powers to the Mayor and Councilmen, concludes thus: "*provided,* that they shall not have power to \* \* \* \* pledge the credit and faith of said city for any sum exceeding $10,000, without first submitting the question to the voters of said city, after twenty days public notice, and a majority of the legal voters assenting thereto." The Act of 1867, ch. 29, empowers the Mayor and Councilmen, for the purpose of building a bridge across the Potomac, to issue bonds of the city; and to levy and collect extraordinary taxes to pay interest on these bonds, and to create a fund for their redemption. Upon appeal from an order granting an injunction against the exercise of the powers granted in the Act of 1867, except as subject to the above proviso in the amended charter, it was HELD:

1st. That the proviso is engrafted upon the effective part of the charter, and is a comprehensive and definite restriction upon the exercise of any power to pledge the faith or credit of the city beyond the limited sum.

2d. That the effect of the Act of 1867, is to place the powers thereby granted, among those previously granted, subject to all the conditions and limitations imposed by the original law.

3d. That to preserve a restrictive proviso of this character, liberal application will be made of the settled rules of construction, that repeals by implication are disfavored; that seemingly contrary statutes shall stand together if by interpretation they may; and that when two laws only so far disagree or differ as that by any other construction they may both stand together, the latter is no repeal of the former.

APPEAL from the Circuit Court for Allegany County, in Equity.

The opinion of the Court sets forth the facts of the case sufficiently.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, GRASON and MILLER, J.

*J. H. Gordon*, for the appellants.

The proviso is a limit only upon the authority of the corporation in the exercise of the power granted by the 4th section, and does not apply to the powers given by the Act of 1867. *Minis vs. United States,* 15 *Peters,* 444; *Smith on Stat. & Const. Law,* 712; *Rex vs. Taunton St. James,* 9 *B. & C.,* 835; *Amey vs. City of Allegany,* 24 *How.,* 372; *Abbott's Dig. Corp.,* 484, *sec.* 16.

The question of power being established in favor of the appellants, a Court of Equity will not grant an injunction to restrain them in the exercise of their discretion so long as they are within the scope of their powers. *Story's Eq. Juris.,* 955, *a; Abbott's Dig. Corp.,* 536, *sec* 553; 498, *sec.* 170; *Attorney General vs. Forbes,* 2 *Mylne & Craig,* 133; *Salmon vs. Randall,* 3 *M. & C.,* 439; *Frewin vs. Lewis,* 4 *M. & C.* 249.

*William Walsh* and *Thomas J. McKaig,* for the appellees.

The policy of the State at the time of the adoption of this restrictive clause, 1st June, 1864, was to prevent the *State*

itself from incurring any debt for internal improvements. *Const.*, 1851, *Art.* 3, sec. 22; *Const.*, 1864, *Art.* 3, sec. 33; *Const.*, 1867, *Art.* 3, sec. 34.

The proper policy for the State is proper for each of its parts, and, therefore, in construing the Acts which have a bearing in this case, the Court should bear in mind the fixed policy established by the *people* in the adoption of these constitutional restrictions.

A later statute does not repeal an earlier one, unless plainly repugnant to the former, or unless it fully embraces the whole subject matter, or unless it does so in terms. *Sedgwick on Stat. & Const. Law*, 124, 127; 3 *Gill*, 154; 20 *Pick.*, 410; 5 *Md.*, 11; 4 *G. & J.*, 152, 153; 12 *G. & J.*, 257.

A repeal by implication is not favored; on the contrary, Courts are bound to uphold the prior law, if the two Acts may well subsist together. 3 *Howard*, 636; 5 *Hill*, 225, 226; *Dwarris on Statutes*, 673-675; 9 *Pick.*, 87, 92; 2 *Pick.*, 172, 176; 24 *Pick.*, 297; 9 *Mass.*, 31.

The necessary implication to repeal an Act must be as certain as an express repeal. 13 *U. S. D.*, 595, sec. 34; 9 *Barbour*, 268.

All Acts in *pari materia* are to be taken together, as if they were one law. 9 *Cowen*, 506.

In the case at bar, the Act authorizing the building the bridge, should be read and construed with the other Act, which prohibited a pledge of the corporate credit over $10,000 without an approving vote of the corporators.

There is no inconsistency or repugnancy whatever between the Acts. Every word of the latter can stand fully with the limitation in the former. It must be borne in mind that the Act of 1867 is an *enabling* Act.

The only effect produced by a construction which permits this prohibition to stand, is, that before the powers granted by the latter law are exercised in the creation of a debt, there shall be an approving vote of the corporators. Such construction is in no manner repugnant to or inconsistent with the

powers conferred by the Act to build the bridge; they all stand, and are all to be exercised, after an approving vote, if an approving vote is given.

To declare otherwise would be to cast a reflection upon the Legislature, which the Court will not do.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order granting an injunction, prohibiting the appellants from issuing bonds of the city of Cumberland to raise money for building a bridge over the Potomac river, and from executing certain contracts alleged to have been entered into for its construction.

A motion to dismiss has been made on the ground that the paper filed as an answer by the Mayor and Councilmen is no answer, not being under the seal of the corporation. We need not decide whether this objection has been waived, and the answer accepted by the replication thereto, or by any subsequent proceedings in the case, so as to sustain the appeal if it had been taken by the corporation alone, because we are satisfied the case is before us on the appeal of the other defendants whose answers are unobjectionable. The motion is therefore overruled.

The bill was filed by certain residents and tax payers of the city of Cumberland, and among other allegations it charges that the corporate authorities have entered into contracts with the other defendants, for amounts exceeding in the aggregate $24,000, for erecting a bridge across the Potomac at a certain point; that this bridge when completed will cost at least $30,000, and that to raise this sum the Mayor and Councilmen are preparing to issue coupon bonds of the city, payable to bearer, by which as well as by the contracts aforesaid, if executed, the faith and credit of the city will become pledged to an amount far exceeding $10,000, without first submitting the question to the decision of a majority of the legal voters of the city, in compliance with its charter as amended by the Act of 1864, ch. 121. The bill then avers

that the authority to issue bonds conferred by the Act of 1867, ch. 29, under which the city authorities pretend to act in the premises, can be executed only in the mode pointed out and subject to the restrictions contained in the charter, or, in other words, that the provision in the Act of 1864, that the faith and credit of the city shall not be pledged. for any sum exceeding $10,000, without the previous assent of a majority of its legal voters, is not repealed by the subsequent law of 1867, but applies to and governs the exercise of all the powers in respect to the issuing of bonds and making contracts to be found in that statute. We must determine whether that is the true construction and effect of these two laws, for if it be, then it is clear the restraining power of a Court of Equity was rightly invoked by the complainants, and properly exercised by the order appealed from.

The law of 1864 is an amendment of the charter of the city. Its fourth section contains grants of certain powers usually conferred upon municipal corporations, including the power to levy a tax not exceeding fifty cents in the hundred dollars and then concludes thus: "*provided* that they" (the Mayor and Councilmen) "*shall not have* power to close or alienate any public street or alley, *or* pledge the credit and faith of said city for any sum exceeding ten thousand dollars without first submitting the question to the voters of said city, after twenty days public notice, and a majority of the legal voters assenting thereto." It is insisted by the appellants that this clause is strictly a *proviso*, which simply imposes a limit or restraint upon the exercise of the powers granted in the preceding part of the same section, and that the subsequent grant of power to build the bridge and issue bonds for the purpose, is a new and independent authority, to be executed entirely irrespective of this charter restriction. But whatever may be the ordinary office of a proviso in excepting something from the enacting clause, or qualifying or restraining its generality, or excluding some possible ground of misinterpretation, in our judgment no such narrow inter-

pretation ought to be placed on this provision. It is engrafted upon the effective part of the charter of a municipal corporation, and no matter by what phrase it may be preceded, is in terms an absolute and unqualified negation of all power to close or alienate any of the public streets, and an equally comprehensive and definite restriction upon the exercise of any power to pledge the faith or credit of the city beyond the limited sum. Its language is too plain to be misunderstood, too imperative to be disregarded, and the result it seeks to attain too salutary and important to be defeated by any nice construction founded on the position in which it is placed, the connection in which it is found, or the technical word by which it is prefaced. In respect to position and connection it is equally potent as if enacted in a separate section. It is moreover a most wholesome and wise restriction, intended to protect in some degree the citizens and tax payers of this city against wasteful and extravagant expenditure of their means and money by any corporate officials, who might at any time be disposed to abuse their trust and use their powers for selfish purposes in disregard of the public good. True, like all other parts of the charter, it is subject to repeal and modification by the Legislature, but until so repealed or modified, expressly or by implication, it stands, and must control the exercise of any subsequent grant of additional powers, unless such subsequent legislation in express terms repeals it, or presents a case of plain and unavoidable repugnancy thereto. And as respects repeal by implication, it may be observed in view of the almost absolute necessity of some check upon municipal extravagance, it is the duty of the Court, in order to preserve a restrictive provision of this character in a prior law, to make liberal application, as against a subsequent statute, of the old and settled rules of construction, that "repeals by implication are things disfavored by law, and never allowed but when the inconsistency and repugnancy are plain and unavoidable;" that "if laws and statutes seem contrary to one another, yet if *by interpretation* they may

stand together they shall stand, and when two laws only so far disagree or differ as that by any other construction they may both stand together, the rule that *leges posteriores priores contrarias abrogant* does not apply, and the latter is no repeal of the former."

But what is this law of 1867, what is its effect and construction, and in what respect are its provisions inconsistent with or repugnant to the prior Act of 1864? It authorizes the Mayor and Councilmen of Cumberland to build a bridge across the Potomac river, at such point as they may judge most practicable and convenient for the trade of the city, and if located beyond the city limits, then to lay out and construct a road from its Maryland terminus to Cumberland; it empowers them to acquire, by purchase or otherwise, lands for the abutments and bridgeways, and to make contracts for building the bridge and for materials therefor. It then authorizes them, for the purpose of raising funds necessary for building the bridge and road, to issue coupon bonds of the city and to levy and collect annually, a special tax over and above the ordinary taxes of the city, to pay interest on these bonds and create a fund for their redemption. It also gives them power, if they deem it advisable, to establish and collect tolls necessary to keep the bridge and road in repair, and to establish such rules and regulations, for the proper protection and repair of the same and the collection of tolls thereon, as they may deem advisable. These are the main provisions of this Act, and such legislation was necessary, because no such power had been conferred by the charter. In all its substantial parts this law is simply a grant of powers to the city corporation, additional to those contained in the 4th section of the Act of 1864, and is as much an amendment of that section to that end as if it had so provided in express terms. Its sole effect therefore is to place these powers amongst those previously granted, subject in their execution to all the conditions and limitations imposed by the original law. The power to issue bonds is given, but

the amount of them is not stated, and no sum is specified as the probable cost of the work, and in this respect it is entirely different from the 5th section of the charter. There is nothing on the face of the law, or in the nature or character of the work authorized to be done, from which an inference can be drawn that the Legislature supposed it would cost a sum exceeding $10,000, or if it did, that the sanction of the citizens by vote should not be first obtained. On the contrary, the failure to name or limit any sum for which bonds might be issued, as well as the fact that the location of the work and the contracts to be made for it, are left entirely in the discretion of the authorities, may well warrant the assumption that the Legislature intended that if a site was fixed upon and contracts made, involving an expenditure beyond $10,000, the provision of the charter should be observed by submitting the question to a vote of the citizens.

It follows from this view of the construction and effect of these statutes that the attempt to pledge the faith and credit of the city by issuing bonds to an amount exceeding $10,000, and executing the contracts complained of without the previous sanction of a majority of the legal voters obtained in the mode prescribed by the charter, was wholly unauthorized, and the injunction to prevent it was on this ground alone properly granted.

*Order affirmed.*

(Decided 31st May, 1871.)