S. HEIDENHEIMER ET AL. v. THE CITY OF GALVESTON ET AL.

(March 13, 1880.)

MUNICIPAL CORPORATION.— Provisions of city charter as to mode of incurring liabilities and as to amount of indebtedness allowed; dedication of property to public use.

APPEAL from Galveston county.   Opinion by QUINAN, J.

STATEMENT.— The grounds alleged of illegality in the action of the city council may be stated succinctly as follows: 1. That the city did not and does not own or possess the right of way on the streets mentioned in Drennan and Sullivan's petition, and has not accepted any deed of dedication to such streets.   2. That the work of filling up the ponds and low places was not done by or on account of the city.   3. That before the work was performed no estimate of the probable cost thereof was made by the city engineer or other officer; that no contract was made by the city and none of the prerequisites provided in such cases in the city charter and ordinances were complied with.   4. That the city owes more than $1,200,000, and by its charter it is provided that its debts shall not exceed $1,200,000.   5. That the city debt already exceeded the amount limited by its charter.

OPINION.— We will consider these propositions in the order stated, and in connection with them the fourteen assignments of error and the several propositions made under them, so far as we deem it necessary to the proper disposition of the case.   They involve the whole contention; and the determination of them, in our judgment, determines the controversy.

1st. As to what is alleged respecting the right of way. We do not think the proposition is supported by the facts or the law.   The proof shows that the owners of the property united in making deeds of dedication to the city of the streets so far as they were extended; that they were opened according to the plots attached to the deeds under the superintendence of the city engineer, who laid them off, measured them, and approved the work.   The city, by its committee on streets and alleys, inspected the work, accepted the deeds of dedication, and recommended the

payment for the work done. The recommendation was adopted by the city council, " who agreed to secure the streets by paying the cost of filling the same, and the council acted accordingly."

It is urged that upon the trial there was no regular proof of the execution of the deeds mentioned; there is no proof of a valid dedication. But this is a mistake. The deeds were not essential to a valid dedication of the land. It may be established by parol. The act of throwing open the property to the public use without any other formality is sufficient to establish the fact of a dedication to the public. The deeds were in the custody of the city, described the extension of the streets, were properly acknowledged, were proven to be the deeds in which the property owners " united and executed and delivered as a valid dedication of the land," were produced by the city. If, in this suit, it could avail the plaintiff anything that there had been no valid dedication of the streets, in the position which they occupied, it devolved upon them to prove it. The city was in possession, satisfied of its right, and the plaintiffs do not show that there is any adverse claim. Oswold v. Grenet, 22 Tex., 101; Ayers v. Hewett, 19 Maine, 281; 2 Dillon on Mun. Corp., 598; 1 Wharton, Ev., 689; Supples v. Lewis, 37 Conn., 568.

2. As to the second proposition, that the work was not done by or on account of the city.

The proof is that it was done by order of the board of health, the owners of the property refusing to do it; that the health officer thereupon " told the contractors to proceed with the work and look to the city. In this way the ponds were redeemed and the nuisance abated." And the board of health were charged with the maintenance of the sanitary condition of the city, and by the charter had power to so order, at the expense of the city, though the owners of the property, it is true, might be compelled to reimburse the city for the expense, if there were otherwise no agreed compensation. Charter, secs. 117, 122.

The third proposition is, in substance, that none of the prerequisites of the charter were complied with, and therefore that the claim is not a legal claim which the city can pay.

As pertinent to this the appellants, under their fifth assignment, say: "A municipal corporation can only act in the cases and in the mode prescribed by its charter; and for street improvements of a local nature, express contracts authorized by ordinance are necessary to create a liability." This is the language of Judge Field in Argenti v. City of San Francisco, 16 Cal., 282, and may be received as sound law, but it has no application to the present case. That was a suit against the city, which denied its liability. In this case the city has recognized its obligation and proposes to pay it. And the act of the city council is not in violation of any rule prescribed by its charter. Section 128, of which the act of the city council is supposed to be a violation, has no application in the case. That section prescribes the rule to be observed by the city council whenever it shall determine to make the improvements mentioned in the previous section, under the power granted them. Id., sec. 127. The city council shall be invested with full power and authority, upon the consent of the resident owners of a majority of the frontage of property on the street to be improved, to grade, shell, repair, or otherwise improve any avenue, street, alley or any portion thereof, within the limits of the city, whenever, by a vote of two-thirds of the aldermen elected, they may deem such improvement for the public good, etc. And both these sections prescribe the preliminary steps to be taken and provide for the payment of the cost, one-third by the city and two-thirds by assessment upon the property fronting on the streets or thoroughfares to be improved. But these sections have no reference whatever to the work of extending streets. They apply only to the improvement, the grading and shelling of the street already opened and used. The power in the one case is given in the amplest way in section 34 of the charter,

"to open, alter, widen, extend, establish, and regulate the same." And we are referred to no section of the charter which prescribes any rule limiting or defining the manner in which they shall exercise this power. The power to open and extend the streets of the city implies, of necessity, the power to acquire the right of way and pay for it. So, also, as we have seen, the power conferred upon the board of health to abate nuisances and to have filled the ponds which might endanger the public health is given without limitation or restriction as to the manner in which it shall be exercised.

In the absence, then, of any rule prescribing any preliminary proceedings as necessary, or the previous making of any contract with parties for the acquisition of right of way, or the extension of the streets, or the abatement of the nuisance condemned by the board of health, inasmuch as the work was done with the assent of the city under the superintendence of its officers and by their direction, the dedication of the right of way accepted and enjoyed by the city, and the streets opened, we concur with the common council in saying, "the work having been done and the citizens benefited thereby, those who did the work should be compensated." If a prior contract was necessary, the act of the city council in accepting the dedication and approving the claim of Drennan and Sullivan, and ordering payment of it, supplied its place and was a satisfaction of what had been done.

Under this same fifth assignment the appellant has stated another proposition: "That the improvements in this case being local, and though, to some extent, of general benefit, yet the advantages resulting from them do not constitute that kind of advantage to the city from the existence of which any liability to pay for the same can be inferred."

It is sufficient answer to this proposition to say the abatement of the nuisance and the filling of the ponds, by order of the board of health, was not a local improvement. It con-

cerned, in the most vital way, the whole city, and the extension of its streets was in the interest of all its people.

It is very evident that, although no special contract was made by the city by any ordinance in respect to these outlays, yet the labor was expended with the knowledge of the city council and its acquiescence, under the superintendence of its officers. They have received all the benefit to be derived from it and are in the full enjoyment of it; they have agreed to make compensation for it; they do not question its validity, and it would be unjust toward the defendant to permit this now to be done, and interpose to prevent the city from carrying out the settlement it has made. Argenti v. City of San Francisco, 16 Cal., 274.

The fourth proposition is that the city owes more than $1,200,000, and that by the charter it is provided that its debt shall not exceed that amount.

The language of section 132 is: "The indebtedness of said city for all purposes, general as well as special, shall not exceed twelve hundred thousand dollars for five years after the passage of this act, . . . and prescribes a penalty against any member of the city council who shall knowingly vote for, or in any manner aid or promote the passage of any ordinance, resolution or act increasing the city debt beyond that amount." The penalty is that he thereby vacates his office and "be punished to the extent provided in section 30 of this act." Section 30 provides for removal from office. If, however, section 31 was intended, the penalty would be any sum not exceeding $5,000 and imprisonment not exceeding six months.

Provisions of like character are now frequently inserted in city charters, and their proper construction has undergone some discussion, but the decisions upon them have been by no means uniform. In McCracken v. City of San Francisco, it was held by Chief Justice Field that the provision was merely directory, while in other cases it has

been looked upon as a definite restriction of power. Cumberland *v.* McGunlan, 34 Md., 381; 1 Dillon, 207.

But it is unnecessary to discuss this question or intimate any opinion upon the subject. Whether the city debt of Galveston exceeded the amount of $1,200,000 was a question of fact to be ascertained by the jury. It was submitted to them by the judge with instructions, if they so found, to find for the plaintiffs. By their verdict they have, in effect, said that the valid debt did not exceed the amount prohibited by law. It was incumbent on the plaintiffs to establish the facts clearly and conclusively to the satisfaction of the jury, and in this they failed. Taking into consideration the inherent difficulty of ascertaining the exact debt of the city, depending upon a settlement of its accounts with all its creditors, involving, perhaps, the adjustment of offsets, counter-claims, and unliquidated and disputed demands generally, and the presumption arising from the fact that the city council, acting under oath and the penalties of the law, and with their better means of information, approved the payment of this debt by a vote of eight to three, we are not prepared to say that the verdict is without evidence to support it. Certainly we cannot undertake to determine, from the information afforded by the record, that the city council erroneously computed the valid debt of the city, and that the error was made clearly to appear.

The motion for a new trial, we think, was properly overruled. So far as objection is made to the verdict because the deeds of dedication were insufficiently proven, we have already intimated an opinion that the introduction of them was not necessary, and if error was committed the error is immaterial. But for the purpose, and under the circumstances in which they were offered, in connection with other facts, we do not think they required further proof. 1 Wharton on Evidence, § 689.

We are of opinion that there is no error in the judgment and that it be affirmed.