WILLIAM L. GARITEE *vs.* THE MAYOR AND CITY
COUNCIL OF BALTIMORE and DANIEL CONSTANTINE.

*Rights of Riparian Owners—Construction of Art. 4, secs. 264,
793, 794 and 795, and of the Acts of 1872, ch. 246, and ch.
58—Public Nuisances—Action by Individual for Special and
Particular Injury from a Public Nuisance—Evidence as to
estimating Damages.*

If the rights of a riparian owner, under the Act of 1862, ch. 129, are
invaded, or their enjoyment obstructed, the owner is entitled to
his remedy for redress, as in other cases of the violation of the rights
of property.

The Act of 1783, ch. 24, sec. 10, as found in sec. 264 of Art. 4 of the
Public Local Laws relating to the City of Baltimore, providing for
the removal of obstructions and annoyances in the basin, harbor
and Patapsco river, and the Act of 1796, ch. 68, sec. 9, as found in
sec. 793 of said Article, providing for the preservation of the navi-
gation of the basin and the river within the city and within four
miles thereof, and sec. 794 of said Article, providing against the
putting or throwing earth, sand or dirt into the river or any of the
navigable branches thereof, or laying out such on the beach or
shore below common high water mark, unless so secured as not to be
washed into the river and its branches, are not in conflict with the
Act of 1872, ch. 246, authorizing the Mayor and City Council of
Baltimore to widen and deepen the ship channel leading into the
Patapsco river and between the mouth of the river and the city,
and to any point within the limits thereof; nor was sec. 794, repealed
by the Act of 1872.

The Mayor and City Council of Baltimore deposited mud, sediment
and other material dredged from the bottom of the basin and in
cleaning out Jones' Falls, on the flats in the Patapsco river opposite
the property of G. on that river within four miles from the city,
and thereby materially obstructed access by water, as formerly used
and enjoyed, to G's property. In an action brought by G. against
the Mayor and City Council to recover damages for an alleged
special and particular injury suffered by G., it was HELD:

1st. That these obstructions constituted a public nuisance.

2nd. That G. could maintain a private civil action for special and particular damage suffered by him by reason of this nuisance, beyond that suffered by the public generally, on offering proof tending to show such to be the case; and that there being penalties prescribed by sec. 795 of Art. 4 of the Public Local Laws, and by the Act of 1872, ch. 58, for such obstructions of the navigation of the river did not exclude all other remedies, nor was the common law remedy by civil action for the damage sustained by G. in any manner affected thereby.

3rd. That the Act of 1872, ch. 58, prohibiting the throwing overboard in the Chesapeake bay, &c., or in any river, creek or harbor in this State, below high water mark, any ballast, earth, &c., under penalties prescribed, with a proviso, that it shall not apply to the improvement of harbors, did not apply to the acts of the Mayor and City Council done in the execution of a plan for the improvement of the harbor.

At the trial G. proposed to ask a witness whether he would, if the obstructions to transportation by water had not existed, have purchased clay from G. and what profits thereon would have accrued to the latter. On objection, it was HELD;

That such evidence was inadmissible, as the foundation for estimating damages.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*Charles J. Bonaparte* and *Geo. Hawkins Williams,* for the appellant.

In this case it is submitted that in determining the rightfulness of the Court's instruction, two questions are presented to this Court, namely :

1. Can the Mayor and City Council of Baltimore or their officers, agents or contractors, lawfully create what

would otherwise be a public nuisance, in the navigable waters of the Patapsco river, by depositing in those waters the refuse removed from its harbor? And

2. If the defendants have no such right, has the plaintiff proved special damage to himself from this public nuisance entitling him to recover for it in a suit at law?

A naturally navigable stream of water is a public highway, and any obstruction to its use as such constitutes a nuisance. *Rex vs. Ward,* 4 *Ad. & El.,* 384; *Rex vs. Grosvenor,* 2 *Starkie,* 511; *Respublica vs. Cauldwell,* 1 *Dallas,* 150; *People vs. Vanderbilt,* 26 *N. Y.,* 287; *Rose vs. Mill,* 4 *M. & S.,* 101; *Beach vs. Schoff,* 28 *Pa. St.,* 195; *Blanchard vs. W. U. Tel. Co.,* 60 *N. Y.,* 510; *Gilman vs. Phila.,* 3 *Wall.,* 713; *Angell on Highways, secs.* 53 *to* 72.

Occupants of land adjoining such a stream have a right to its use analagous to their property in an easement. *Angell on Tidewaters,* 171; *Ball vs. Slack,* 2 *Whart. (Pa.,)* 538; *Cartelyon vs. Van Bruntts,* 2 *Johns, (N. Y.,)* 357; *Yates vs. Milwaukie,* 10 *Wall.,* 497; *Buccleugh vs. Metr. B. of W.,* 5 *E. & J. App. (L. R.,)* 418; *Chapman vs. Oshkosh R. R.,* 33 *Wis.,* 629; *Bowman vs. Watten,* 2 *McLean,* 376; *Clement vs. Burns,* 43 *N. H.,* 609; *Day vs. Day,* 22 *Md.,* 537; *R. R. Co. vs. Schurmeir,* 7 *Wall.,* 372; 7 *Ind.,* 38; 10 *Mich.,* 145–6.

This right could not be constitutionally abridged without compensation. *Constitution of Md., Art.* 3, *sec.* 40; *Pumpelly vs. Green Bay Co.,* 13 *Wall.,* 166; *Buccleugh vs. Metr. B. of W., supra; Eaton vs. B. C. & M. R. R. Co.,* 51 *N. H.,* 504; *Lackland vs. R. R. Co.,* 31 *Mo.,* 180; *Stetson vs. Faxon,* 19 *Pick.,* 147, 158; *Thayer vs. the City of Boston,* 19 *Pick.,* 511; *Tate vs. the Ohio & M. R. Co.,* 7 *Ind.,* 479; *Nevens vs. The City of Peoria,* 41 *Ill.,* 502.

The navigability of the Patapsco river is admitted by the pleadings in this cause, besides being clearly established by the proof, and is, moreover, part of the statute law of the State. *Public Local Laws, Art.* 4, *secs.* 793–796.

No act, therefore, allowing the city to deprive this plaintiff of his water front, without compensating him for its loss, would be valid. *Art. 3, sec. 40, of Constitution, supra,* 43 *Md.,* 38.

But no such Act has been passed : the City's right under the statute is to *preserve, not to obstruct,* the navigable channel ; its duty is to do precisely the opposite of what it has done, and, far from being exempted from liability for an obstruction placed by its agents in the channel, it would be responsible for such a nuisance, even if created by other persons. *Mayor & C. C. of Balto. vs. Marriott,* 9 *Md.,* 160 ; *Mayor & C. C. of Balto. vs. Pendleton, et al.,* 15 *Md.,* 12 ; *Mayor & C. C. of Balto. vs. Holmes,* 39 *Md.,* 243 ; *Walter vs. Co. Comm'rs of Wicomico Co.,* 35 *Md.,* 385 ; *Co. Comm'rs of Balto. Co. vs. Baker,* 44 *Md.,* 1 ; *Co. Comm'rs of A. A. Co. vs. Duckett,* 20 *Md.,* 470.

Any substantial injury caused by a public nuisance which the plaintiff's occupation or the situation of his person or property makes *peculiar* to him, differing not merely in *degree,* but in *kind* from that caused by it to other members of the community not so circumstanced, entitles him to sue the person guilty of creating the nuisance. *Houck vs. Wachter,* 34 *Md.,* 265 ; *Brown vs. Watson,* 47 *Maine,* 161 ; *Winterbottom vs. Lord Derby, L. R.,* 2 *Exch.,* 316 ; *Carpenter vs. Mann,* 17 *Wis.,* 155 ; *Blanc vs. Klumpke,* 29 *Cal.,* 156 ; *Cook vs Corporation of Bath,* 6 *L. R. Eq. Cas.,* 177 ; *Wood on Nuisance, Chap. XVIII, secs.* 618 *to* 676.

Here the plaintiff showed :

Loss of custom to his hotel as a pleasure resort ; which was sufficient of itself. *Morley vs. Pragnall, Cro. Cas.,* 510 ; *Rose vs. Groves,* 12 *L. J. C. P.,* 251 ; *Wesson vs. Washburne Iron Co.,* 13 *Allen, (Mass.,)* 95.

Depreciation in value of his land ; this also would be enough. *Stetson vs. Faxon,* 19 *Pick., (Mass.,)* 147 ; *Francis vs. Schoellkoppf,* 53 *N. Y.,* 162 ; *Attorney-General vs. Earl*

*of Lonsdale, L. R.,* 7 *Eq. Cas.,* 390 ; *Lansing vs. Smith,* 4 *Wend.,* (*N. Y.,*) 10 ; *Frink, et al. vs. Lawrence,* 20 *Conn.,* 117 ; *Dobson vs. Blackmore,* 16 *L. J. Q. B.,* 233.

Loss of a lucrative sale, a very strong instance of special damage. *Iveson vs. Moore, Ld. Raym.,* 486 ; *Rose vs. Miles, M. & S.,* 101 ; *Hughes vs. Heiser,* 1 *Binn.,* (*Pa.,*) 463 ; *Greasley vs. Codling,* 2 *Bing.,* 263 ; *Powers vs. Irish,* 23 *Mich.,* 429.

Discomfort from foul odors to occupants of his premises, and injury to their habitability. *Soltan vs. De Held,* 9 *Eng. L. & Eq.,* 102 ; *Ross vs. Butler,* 4 *C. E. Green,* (*N. J.,*) 294 ; *Weir vs. Kirk,* 73 *Pa. St.,* 284 ; *Crooke vs. Forbes, L. R.,* 5 *Eq.,* 166 ; *Ottawa G. L. Co. vs. Thompson,* 39 *Ill.,* 598.

Upon *four* distinct grounds, therefore, the appellant is entitled to recover for the *special* damage, *peculiar* to himself and differing in *kind* as well as *degree,* from that suffered in common with all other members of the community, caused him by this public nuisance.

*Argumenti gratia,* this case has been hitherto assumed to be a private suit brought to recover for a public nuisance, it is, however, submitted, that speaking accurately, these obstructions were at once a *public* and a *private* nuisance ; public, in so far as they interfered with navigation and injured fishing ; private, as regarded the damage they did to the owners of adjoining property. *Wood on Nuisances,* secs. 641–653 ; *Hamilton vs. Whitridge,* 11 *Md.,* 128 ; *Del. & Md. R. R. Co. vs. Stump,* 8 *G. & J.,* 479 ; *Harrison vs. Sterrett,* 4 *H. & McH.,* 540 ; *Spencer vs. L. & B. R. W. Co.,* 8 *Sim.,* 193 ; *Sampson vs. Smith, Ibid,* 272 ; *Frink vs. Lawrence,* 20 *Conn.,* 118 ; *Corning, et al. vs. Lowerre,* 6 *Johns. Ch.,* 439.

Should a new trial be awarded in this case, it will be material for this Court to pass upon the admissibility of the evidence to the exclusion of which below the appellant's first exception was taken. This was in substance proof that the witness, Parr, who had already testified to

his abandonment of one contract to purchase clay from the plaintiff on terms very advantageous to the latter, solely because these obstructions prevented his shipping it at a reasonable cost, afterwards made large purchases of similar clay from other persons which he could and would preferably have obtained from the plaintiff upon the terms of the abortive transaction above described, had not the latter's land been thus rendered artificially inaccessible.

It is submitted that the profits of these sales were as really lost to the appellant, because of the appellee's wrongful acts, as if the parties had gone through the vain form of making contracts which both then knew those acts had rendered impossible to perform. There was nothing vague or doubtful about the injury; it was so many dollars and cents out of the appellant's pocket, because, and because *only* of the appellee's dumping. *Simmons vs. Brown,* 5 *R. I.,* 299; *Hamner vs. Knowles,* 6 *H. & N.,* 454–459; *Fult vs. Wycoff,* 25 *Ind.,* 321; *Gillett vs. Western R. R. Co.,* 8 *Allen,* (*Mass.*) 560; *Howes vs. Ashfield,* 99 *Mass.,* 540; *Albert vs. The Bleecker St. R. R. Co.,* 2 *Daly,* (*N. Y. C. P.,*) 389.

*James L. McLane, City Counselor,* and *E. O. Hinkley,* for the appellees.

1. A riparian owner has no such right to land under a navigable stream, as to prevent the State, or its agent, from filling up the stream in any manner which does not injure the general right of navigation; and if a riparian owner is damaged by such filling up, it is *damnum absque injuria.*

2. The riparian owner's rights, under Act of 1862, ch. 129, are not to be construed as in contravention of the State's right to fill up; the State intending only to preclude itself from granting the land to another by patent, as it had a right to do before that act; but not to preclude

itself as to such owner from the exercise of any rights theretofore existing in it. *Day vs. Day*, 22 *Md.*, 530; *Pollard vs. Hagan*, 3 *How.*, 212.

3. The State has deputed to the municipality of Baltimore its right, or assigned to it the duty, as a subordinate branch of the government, and an agent for it, of keeping the harbor of Baltimore, and the channel approaching it, in proper order, and if the public is not injured, no private owner can complain of the exercise of this right.

4. If the plaintiff is not injured in a manner different in kind from the rest of the public, he has no right to complain, even if the city were proceeding unlawfully.

The injury to navigation is the same to all. The clay on his land being no more special to him than clay on the land of others, or than crops.

If what the city has done be a *nuisance*, the remedy is not by a civil action. *Houck vs. Wachter*, 34 *Md.*, 265; *Acts of* 1872, *ch.* 58; 1870, *ch.* 44; *Secs.* 794 *and* 795, *Art.* 4, *P. L. L.*

5. The State itself having prescribed the mode for redressing any injury of the kind complained of by plaintiff, no other mode can be used.

6. The evidence rejected was clearly inadmissible, because uncertain or conjectural profits cannot be used as the measure of damages.

It is to be distinctly noticed that the acts complained of were not committed on the plaintiff's land, but only the land covered with water; that is, on the land below low water mark. Independently of the Act of 1862, ch. 129, the State had a right to all the land under navigable waters. *Day vs. Day*, 22 *Md.*, 530; *Martin vs. Waddell*, 16 *Peters*, 367; *Smith vs. Maryland*, 18 *Howard*, 71; *Browne vs. Kennedy*, 5 *H. & J.*, 195; *Pollard vs. Hagan*, 3 *Howard*, 212, (*affirming Martin vs. Waddell.*)

The question of the rights of the State to the soil under the water must not be confounded with the right to wharf

In some States it has been held that the State may grant the land, between high and low water mark, out to private persons.

This doctrine has been severely criticised, and many cases are collected on the subject in *Providence Steam Engine Co. vs. Providence Steamship Co., in Supreme Court of Rhode Island, July,* 1879—*reported in the Central Law Journal of St. Louis, Missouri, Vol. 9, No. 21, for 21st November,* 1879.

And in *Balto. & Ohio R. R. Co. vs. Chase,* 43 *Md.,* 23— the right to wharf out is recognized.

This right is not denied in this case; but it is denied that the State has not the power to fill up flats, and so to determine within what bounds a navigable stream shall run.

It is not taking away any right of the riparian owner, nor in any way impairing it, but rather promoting it and facilitating its exercise.

On what ground can the right to erect bridges over navigable streams be supported, unless the State has a paramount right to regulate or modify the right of navigation, so however as not to injure the public? *Dew vs. Jersey Co.,* 15 *Howard,* 426; *Rundle vs. Delaware Canal, &c.,* 14 *Howard,* 80; *Barney vs. Keokuk,* 94 *U. S.,* 324; *Atlee vs. Packet Co.* 21 *Wallace,* 390; *Weber vs. Harbor Com.,* 18 *Wallace,* 57; *Miss. & Mo. R. R. vs. Ward,* 2 *Black,* 485; *Transportation Co. vs. Chicago,* 99 *U. S.,* 635.

Art. 30, Pub. Gen. Laws, sec. 170, sub-title Rivers, is amended by 1870, ch. 44, and again by 1872, ch. 58, approved March 1st, 1872, which is a substitute for both, which prohibits any ballast, &c., from being cast out in any river below high water mark.

The Act of 1872, ch. 246, approved April 1st, 1872, grants power to the City to keep the ship channel, between the mouth of the Patapsco river and the City "*in proper condition in respect to width and depth.*" If these Acts

conflict, then ch. 246, being the later, must prevail. If both stand well together, then they must be construed in *pari materia,* and to each must be given its due force; in other words, the control given to the city is consistent with the prohibition upon others. *Straus vs. Heiss,* 38 *Md.,* 292.

Art. 4, Pub. Loc. Laws, sub-title Navigation, sec. 794, may be construed in the same manner. It is to be particularly noted, that this section in the laws defining the rights of the city, is not a prohibition on the city itself, but on others; the language—"*no person, or his servant*"—cannot, in the connection in which it stands, be intended to prohibit the city. If such were the proper construction, then 1872, ch. 246 controls it.

ALVEY, J., delivered the opinion of the Court.

This is an action on the case brought by the appellant against the appellees to recover damages for an alleged special and particular injury suffered by the appellant from the acts of the appellees in filling up the Patapsco river in front of his, the appellant's property bounding on said river, and thereby obstructing access to such property by water as formerly used and enjoyed.

There is little or no dispute in regard to the principal facts of the case. It is conceded that the appellant is, and has been since about the year 1868 or 1869, the owner of two several parcels of land fronting on the Patapsco river, a tidal navigable stream, within four miles of Baltimore city,—one parcel in fee and the other a leasehold. It also appears that upon the parcel owned in fee there is a large building, which has occasionally been rented out and used as a place of resort for excursionist and pleasure parties during the summer season; and that upon the leasehold premises there is an extensive brickyard, and upon both parcels of land there are deposits of valuable brick-clay, and, upon one of them, potter's clay also. It

is also shown that there is a wharf, extended out from the leasehold parcel of land, about two hundred feet long, to which boats and vessels of considerable size could come and load and unload, before the obstructions complained of by the appellant.

The deposits, causing the obstructions complained of, were the mud, sediment and other material, dredged from the bottom of the basin, and in cleaning out Jones' Falls, in the City of Baltimore, and by the agents and employees of the city, transported in scows to the flats opposite to the property of the appellant and there dumped out in water which, previous to that time, was navigable for steam-boats, steam-tugs, scows and other transports. This dumping commenced in 1874 and continued to the time of bringing this suit; and it is conceded that it has materially obstructed the access by water to the property of the appellant.

The manner of making the deposits was to commence as near in to the shore as the tug and scow could be taken, and thence recede out towards the channel·of the river, as the water became too shallow from the deposits to float the tug and loaded scow; and in this way deposits were made along nearly, if not quite, the entire front of the appellant's property. The evidence tended to show that by reason of the obstructions thus placed in the previously navigable water in front of this property, the appellant would now have much greater difficulty in sending off his bricks or clay from the premises by boats or scows, than formerly existed; and that the approach to the wharf is much obstructed by these deposits, and that now, a wharf to answer the same purposes as the one in existence did formerly, would have to be extended out from six hundred to eight hundred yards, and at a considerable cost. It was further shown that the appellant remonstrated from time to time against the making of these deposits.

At the close of the appellant's case, without requiring the defendants to proceed, the Court below instructed the jury that there was no evidence in the cause from which they could find that the plaintiff had sustained injury or damage for which he could recover in this action. And whether this instruction was proper, in view of all the facts contained in the record, this Court is now called upon to determine.

In giving this instruction, the Court below was required, and so this Court in reviewing that ruling, to assume as established, for the purposes of the decision, all the facts in favor of the appellant which the jury would have been justified in finding from all the evidence before them.

It is conceded, of course, that the appellant is a riparian owner, and that he has all the rights of such ownership; but it is contended on the part of the appellees that what has been done has been done by competent authority, and though the appellant may have been injured thereby, it is *damnum absque injuria*, and therefore no action can be maintained.

Now, in order to treat intelligibly this broad general proposition, it is necessary to ascertain, in the first place, what are the rights of the appellant as riparian owner, and the extent of those rights; and, in the second place, to what extent, if at all, the appellees were authorized to make the deposits in front of the appellant's property, with proper legal regard to his rights as riparian owner.

1. In defining the exact limits of the rights of the riparian proprietor at the common law, on navigable tidal streams, there is to be found a considerable diversity of opinion among Courts of high authority, as well as among the writers upon the subject. In this State, however, those rights have been defined by statute, and secured to the proprietor to an extent beyond what the common law allowed, even according to the largest definition of those rights under that law. This has been effected by the Act

of 1862, ch. 129.   By the first section of that Act, the
proprietor of land bounding on any of the navigable
waters of this State is declared to be entitled to all accre-
tions to said land by the recession of the water, whether
formed by natural causes or otherwise, in like manner and
to the like extent as such right may be claimed by the
proprietor of land bounding on water not navigable.  And
by the second section, such proprietor is declared to be
entitled to the exclusive *right* of making improvements
into the water in front of his land; and that such improve-
ments and accretions shall pass to the successive owners
of the land to which they are attached, as incident to their
respective estates; saving only that no such improvement
shall be so constructed as to interfere with the navigation
of the stream.   The third section declares that no patent
shall issue by the State for land covered by navigable
waters, or to impair or affect the rights of riparian proprie-
tors as by the Act are explained and declared; and this
Court has held, in the case of *Day vs. Day*, 22 *Md.*, 530, .
that no patent could issue for lands below high water
mark, because it would interfere with those rights.

These rights, thus secured, are valuable; they are prop-
erty, according to repeated decisions ; and of which the
owner cannot be deprived without his consent, or by other
competent legal means.   *Dunyan vs. City of Baltimore*, 5
*G. & J.*, 367; *Casey vs. Inloes*, 1 *Gill*, 501; *Balt. & Ohio R.
Co. vs. Chase*, 43 *Md.*, 23; *Buccleugh vs. Met. Board of
Works*, 5 *H. L.*, 418.   And whenever those rights are in-
vaded, or their enjoyment obstructed, the owner is entitled
to his remedy for redress, as in other cases of the violation
of the rights of property.

2. Such being the rights of the appellant as riparian
owner, the next inquiry is, what is the power given by law
to the City of Baltimore in regard to the cleaning out and
the improvement of its harbor, and the deposits of the

mud and material removed in making such improvement?

From a very early day in the history of Baltimore, there has been special legislation upon this subject. By the Act of 1783, ch. 24, providing for the appointment of wardens for the port of Baltimore Town, in the tenth section of the Act, the wardens were required to have cleared out and scoured the basin and harbor of the town, and to have removed " all obstructions and annoyances in and upon the said basin, harbor and river, whether from vessels sunk or any other cause." This provision is still in force and is now found in the Code of Public Local Laws, Art. 4, sec. 264. And in the Act of 1796, ch. 68, first chartering the city, among the numerous powers delegated was one, to be found in the ninth section of the Act, to provide for the preservation of the navigation of the basin, and Patapsco river within the limits of the city, *and within four miles thereof.* This provision still remains among the powers of the city, as appears from section 793 of Art. 4 of the Code of Pub. Local Laws; and by the next succeeding section of the same Article of the Code, it is declared that "No person, his servant, &c. shall put or throw into the Patapsco river, or any of the navigable branches thereof, any earth, sand, or dirt, or lay out on the beach or shore of said river below common high water mark, any earth, sand or dirt, unless such earth, sand or dirt, be first well secured by stone walls, dovetailed log pens or otherwise, so that no part thereof may wash into said river or the navigable branches thereof." These provisions manifest the care with which the Legislature has guarded this river and harbor against deposits and obstructions of all kinds, not only the main channels thereof, but every part of them.

If the mud and material dredged from the channels or particular localities might be deposited in other parts of the river where, by the action of the tides, such material

would be washed down the slopes and made to fill up the channels and obstruct navigation, the work of cleaning out and improving would be of but temporary value. All such deposits are prohibited, under a penalty, in any part of the river or harbor, unless they be secured as provided in the statute, so as to prevent their being washed again into the river.

It is contended, however, that all this legislation has been essentially modified by the the Act of 1872, ch. 246. By that Act the City of Baltimore was clothed with full power and authority, to widen and deepen the *ship channel* leading into the Patapsco river, and between the mouth of the river and the city, and to any point within the limits thereof, and to keep such channel in proper condition in respect to width and depth. This Act makes no reference whatever to any previous legislation; and in order to deduce from it the power claimed by the appellees, it is necessary to maintain not only that the express authority given conferred by implication power to do what is complained of by the appellant, but that this latter Act repealed by implication the 794th section of Art. 4 of the the Public Local Code, heretofore referred to and quoted. Such construction, however, is supported by no authority, and cannot for a moment be maintained. Repeals by mere implication are never favored by the Courts; the general presumption being against an intention on the part of the Legislature to alter or modify the pre-existing law beyond the express terms or immediate scope of the statute relied on as having the effect of a repeal. If the subsequent Act can be made, by any reasonable construction or intendment, to stand with the previous legislation, that construction will always be adopted. This is a canon of construction which is as well established as any principle of the law. *City of Cumberland vs. Magruder*, 34 *Md.*, 381; *William vs. Pritchard*, 4 *D. & E.*, 2; *Sedg. on St.*, 123, 125. Here there is no sort of conflict between the later and

previous statutes; the later statute simply conferring additional power in affirmative terms, without at all undertaking to regulate or touch upon the subject-matter of former statutes.

The 794th sec. of Art. 4 of the Public Local Code being therefore still in force, the appellees were not only without authority for what they did, but their acts were in plain violation of the terms of the statute. And that being so, all the authorities agree in holding that the obstructions complained of, placed in a public navigable river, without competent authority, would constitute a public nuisance. The public have a right, at common law, to navigate over every part of a common navigable river. 3 *Kent Com.*, 427. They have a right to all the conveniences which the former state of the river afforded, and they cannot be deprived of this benefit by the exercise of any discretionary power on the part of the city, or its officials or agents, as to the uses to be made of certain parts of the bed of the river, even for the improvement of other parts. This has been expressly so decided. *Rex vs. Grosvenor*, 2 *Stark.*, 511; *Rex vs. Ward*, 4 *Ad. & Ell.*, 384.

3. Taking it then to be clear that the acts complained of constituted a public nuisance, the next question is, has the appellant offered proof tending to show that he has suffered such special and particular damage by reason of this nuisance, beyond that suffered by the public generally, as to enable him to maintain a private civil action therefor? It was upon this question alone that the Court below instructed the jury against the right of the appellant to recover.

In the ordinary cases that occur it is no easy matter to determine when a private action may be maintained for injuries suffered from a public nuisance. The general rule doubtless is, in regard to which there is but little disagreement among the authorities, that no person can

maintain a private action for injuries resulting from a common nuisance, unless he can show that he has sustained some special damage therefrom different from that sustained by the public generally. In the case of *Houck vs. Wachter*, 34 *Md.*, 265, which was an action brought for damages sustained for the alleged obstruction of a highway, and the question in which was raised by a demurrer to the declaration, because the special damage was not sufficiently alleged, this Court stated the general rule to be, as the result of the authorities upon the subject, that to support the action, the damage must be different, not merely in degree, but different in kind from that suffered in common; and hence, though the plaintiff had suffered more inconvenience than others from the obstruction, by reason of his proximity to the highway, that would not entitle him to maintain the action. In the application of this general rule, however, each case must depend, more or less, upon its own special circumstances. In the case before us, if the jury should find, and we think there was evidence proper to have been submitted to them upon the subject, that the wharf of the appellant, built and used before the obstructions complained of were created, was, by reason of the obstructions placed in front of it, or in the immediate and direct approaches to it, rendered of little or no value, or that the right to improve out from the shore, under the statute, has been rendered more difficult and of less value; or that, by reason of the obstructions placed in front of the appellant's property, boats bringing visitors or excursionists to his premises, from whom he would derive profit, cannot reach the shore as formerly, and that profit has been or will be lost to him; or that his brickyard, dependent for its value upon the water transportation of the bricks and clay therefrom, has been, by the obstructions complained of, rendered inaccessible by water and thereby diminished in value; then, in either of the cases thus stated, we think, the appellant will have shown

a case of special and particular injury that will entitle him to maintain his action. He can have no claim, of course, simply for the obstruction of navigation, which constitutes the public nuisance; nor can he have claim for any injury sustained in common with the rest of the public. It is only as the dumping or deposits in front of the appellant's property may affect his rights and privileges as riparian owner that he can make claim. By the obstructions in the immediate front of his property, preventing access thereto as formerly, he suffers an injury that no other member of the public can suffer. It is the peculiar and direct relation of the deposits complained of to the property and rights of the appellant that gives rise to the special and particular damage; and no other person than the owner of this particular property can be affected in like manner from these particular deposits. This was the ground upon which the actions were supported in the cases of *Iveson vs. Moore*, 1 *Ld. Raym.*, 486, and *Wilkes vs. Hungerford Market Co.*, 2 *New Cas.*, 281.

In the first of the cases just mentioned, the wrong complained of was the prevention of customers from coming to the plaintiff's colliery by obstructing a public highway, *per quod* the benefits and profits of the colliery were lost, and the coals dug out depreciated in value. The case underwent great consideration; the King's Bench being equally divided upon the question of the right to maintain the action, and Lord HOLT being against the plaintiff; but, at the instance of Lord HOLT, the case was afterwards heard before all the Judges of the Common Pleas and Barons of the Exchequer, at *Sergeant's Inn;* and they were all of opinion that there was such a special and particular damage shown as enabled the plaintiff to maintain the action for the private injury resulting from the public nuisance. That case has never been questioned, but has been followed in all subsequent cases. See case of *Chichester vs. Lethbridge, Willes,* 71, and note thereto.

The case of *Wilkes vs. Hungerford Market Co.* is also a strong authority.   There, the plaintiff, a bookseller, having a shop by the side of a public thoroughfare, suffered loss in his business in consequence of passengers having been diverted from the thoroughfare by the defendants' continuing an unauthorized obstruction across it for an unreasonable time ; and it was held that that was a damage sufficiently of a private nature to form the subject of a civil action by the plaintiff.   And in that case, in speaking of the distinction between the public and private injury, Chief Justice TINDALL said : " The injury to the subjects in general, is, that they cannot walk in the same track as before ; and for that cause alone an action on the case would not lie ; but the injury to the plaintiff is, the loss of a trade, which but for this obstruction to the general right of way he would have enjoyed ; and the law has said from the Year Books downwards, that if a party has sustained any particular injury, beyond that which affects the public at large, an action will lie for redress."   It was not therefore for the obstruction of the highway, or any mere inconvenience thereby to the plaintiff, even greater than that suffered by others, that the action was held to be maintainable, but, within the principle laid down in *Houck vs. Wachter*, 34 *Md.,* 272, it was because the damage suffered was different both in degree and kind from that suffered by the public generally.   Many other cases might be referred to in support and as illustrative of the general principle stated ; but, in addition to the authorities already referred to it will not be necessary to do more than refer to the case of *Rose vs. Groves*, 5 *M. & G.,* 613, decided by the English Common Pleas in 1843.

In that case the question as to what special damage will sustain an action of the class of the one now under consideration was fully considered.   There the declaration alleged that the plaintiff was possessed of a public house abutting upon a navigable river, and that the defendant

wrongfully and maliciously placed upon the river, and kept there for a considerable time, certain timbers, so as to drift opposite to the plaintiff's house, whereby the access to the house was obstructed, and divers persons who would otherwise have come to the house and taken refreshments there, were prevented from so doing.  The Judge who tried the case below having left it to the jury to say whether the access to the plaintiff's house had been obstructed in fact, and the jury having found for the plaintiff, there was a motion in arrest of judgment, and also a motion for a new trial upon the ground of misdirection. The rule upon both motions was refused.  The case was fully argued and considered in two aspects: first, as presenting simply the case of a private nuisance, and secondly, as a case of public nuisance, attended with special and particular damage to the plaintiff.  And upon review of the authorities, all the Judges were of opinion that the declaration disclosed a case of special and particular damage to the plaintiff, and held that, in either aspect in which the case was presented, the action was maintainable.  And in support of the action, treating the case as founded upon a public nuisance doing special injury to the plaintiff, they cite and rely upon the leading case of *Iveson vs. Moore*, 1 *Ld. Raym.*, 486; *Wilkes vs. Hungerford Market Co.*, 2 *New Cas.*, 281, and *Rose vs. Miles*, 4 *M. & S.*, 101. The same principle is fully recognized in the recent cases in equity, of *Cook vs. Corporation of Bath, L. R.*, 6 *Eq. Cas.*, 177, and *Att. Genl. vs. Earl of Lansdale, L. R.*, 7 *Eq. Cas.*, 390.

The appellees contend, however, that though they may not have been authorized to do what is complained of, and what has been done by them constitutes a nuisance that specially affects the appellant, the remedy therefor is not by civil action, but must be for the penalties prescribed by the Code of Pub. L. L., Art. 4, sec. 795, and the Act of 1872, ch. 58.  But to this position the answer is exceed-

ingly plain. In the first place, the statutes referred to do not profess, in prescribing the penalties for their violation, to exclude all other remedies. Moreover, it was not the purpose of those statutes to provide for the redress of private injuries; and though the acts complained of may have rendered the parties committing them liable to the infliction of the penalties prescribed, as for a public wrong, the common law remedy by civil action for the damage sustained by an individual is in no manner affected. Upon this subject, see the case of *Renwick vs. Morris,* 3 *Hill,* 621, and *S. C., in Error,* 7 *Hill,* 575.

In the next place, as to the Act of 1872, ch. 58, that has no application to this case, or to the acts complained of as the source of the grievance. That Act contains a general prohibition against throwing overboard, in the waters of the Chesapeake Bay, above Sandy Point, or in Herring Bay, or in any river, creek or harbor, in this State, below high water mark, any ballast, ashes, filth, earth, soil, or oyster shells, under penalties prescribed; with a *proviso,* that nothing therein contained shall be construed to apply to the improvement of harbors. As we have already seen, the City of Baltimore is charged with the duty of providing for the preservation of the navigation of the basin, and the river Patapsco within the limits of the city, and within four miles thereof. This, for all purposes of improvement of navigation, must be regarded as the extent and limit of the harbor. The acts complained of were done, though improperly and illegally done, in execution of a plan for the improvement of the harbor; and being done for the relief and improvement of the harbor, they were exempt from the operation of the Act of 1872, ch. 58, and the penalties therein prescribed.

With these views of the case, we think, upon the testimony disclosed, it should have been submitted to the jury for their consideration; and therefore there was error in the instruction given by the Court below.

Garitee *vs.* M. & C. C. of Balto., *et al.*

Having thus disposed of the principal questions presented in the case, it only remains to say a few words in regard to the question of evidence presented by the first exception taken by the appellant. That exception was to the refusal of the Court to allow the introduction of evidence as to profits that might have been made by the sale of clay by the appellant from his land. It was proposed to ask the witness Parr, whether he would, if the obstructions to transportation by water had not existed, have purchased clay from the appellant, and what profits thereon would have accrued to the latter. This was disallowed by the Court, and we think properly so. It was altogether too contingent and speculative to be considered by the jury. We know of no case that has sanctioned the admission of such evidence as the foundation for estimating damages.

Concurring with the Court below in its ruling in the first exception, but differing with it as to the ruling set out in the second, we must reverse the judgment appealed from, and award a new trial.

*Judgment reversed, and*
*new trial awarded.*